### R. E. HEWITT v. THE STATE.

PRACTICE — EVIDENCE.— Art. 661 of the Code of Criminal Procedure provides that evidence essential to the due administration of justice shall be received at any time before the conclusion of argument. If the admission of the evidence was necessary to the due administration of justice, the court had no discretionary authority to exclude it. Note the facts of this case.

APPEAL from the District Court of Bowie. Tried below before the Hon. B. T. ESTES.

The indictment charged the theft from W. W. Sanders, in Bowie county, on the 15th day of May, 1880, of ten twenty-dollar gold pieces. The appellant was found guilty, and his punishment affixed at two years in the penitentiary.

The substance of the testimony of W. W. Sanders, for the State, was that, on the 1st day of May, 1880, he was engaged in merchandising in the village of De Kalb, Bowie county, Texas. He kept his safe in the rear room of his store, and this safe was usually left open during the day. On the 28th day of April, 1880, the witness had put ten twenty-dollar gold pieces, wrapped in a piece of newspaper, in the inside drawer of the safe. At about 3 o'clock, P. M., of the evening of May 1, 1880, he missed the said money from his safe, and it was taken without his knowledge or consent. The witness saw the appellant in De Kalb on that day,— May 1st, 1880. A few days after he missed his money, he heard a conversation between the appellant and some other party, during the course of which the appellant said that he and a friend had drawn $150 in a lottery, and that he expected to realize his interest from his friend, whom he expected to meet at a picnic at Blossom Prairie. About forty days elapsed after the money was taken before the appellant was arrested.

R. S. M. Watson testified, for the prosecution, that on the first Saturday in May, 1880, he was in the freight-room which stands in the rear of Sanders' store building, separated from it by an alley some three feet wide. A door in this freight-room faced a door which opened into the rear room of Sanders' store building, in which the safe was kept from which the money alleged to have been stolen was taken. The witness stood about twenty feet from the freight-room door, and about thirty feet from the safe. While there he saw the appellant standing at the safe; saw him put his hand in the safe and withdraw it with a roll in a newspaper, about two inches long. The appellant passed out of the room and out of the witness' sight, but the witness saw him again presently, opening the package, which, the witness saw, contained some yellow metallic substance, which he took to be gold. He thought at the time that the appellant was stealing, but, though he knew the safe belonged to Sanders and saw him immediately afterwards, he said nothing to him about it.

This witness testified further that himself and the appellant had not been on good terms since the 3d of April preceding, on which day the appellant and a son-in-law of the witness had a fight. The witness and the appellant were distantly related by marriage. The witness told his wife and son-in-law of the occurrence a few days afterwards. This was the same son-in-law with whom the appellant had fought, and the two were at enmity. He refrained from speaking of the matter to others because he had no desire to injure the appellant, and finally told it only when suspicion fell upon his own family. Afterwards witness told T. W. Hooks, one of Sanders' clerks, since dead, and also Capt. McKinney, a commercial traveler. He did not mention on the preliminary trial that he had told Hooks and McKinney, though the former was then alive and both were present; he was

not asked on that occasion who were present. The witness admitted that at the preliminary trial he stated that he did not mention having seen the appellant at the safe until suspicion fell on his own family. No one was present with the witness in the freight-room when he saw the appellant at the safe.

James Smith, for the State, testified that about the 1st of May, 1880, the appellant borrowed ten dollars of him to pay a fine imposed for fighting with McCall, son-in-law of the witness Watson, and returned it in eight or ten days.

J. B. Lissiter, witness for the State, testified that he sold the appellant a suit of clothes on or about May 11, 1880, and received a twenty-dollar gold piece in payment. This was before the picnic at Blossom Prairie. Subsequently he saw the appellant in possession of another twenty-dollar gold piece. The witness' store was situated about seventy-five feet distant from Sanders' store, in De Kalb. He knew nothing of appellant's financial condition previous to the alleged theft.

T. H. Lenox, for the State, testified that subsequent to the 1st day of May, 1880, he sold the appellant a horse and received in payment a twenty-dollar gold piece, ten dollars in currency, and the appellant's note for twenty-five dollars.

C. W. Morrow, depot agent of the T. & P. Railway at De Kalb, testified that some days before the Blossom Prairie picnic, which was on May 13, 1880, appellant bought some tickets for which he paid witness a twenty-dollar gold piece, receiving change from witness. The witness changed another twenty-dollar gold piece for him about the same time.

Other witnesses testified to seeing the appellant in possession of gold money of the denomination of $20, subsequent to May 1, 1880, and before his arrest.

John Lawler, for the defense, testified that the picnic

at Blossom Prairie was on the 13th day of May, and that three weeks previous thereto, lacking from Thursday to Sunday, he saw the appellant in possession of a twenty-dollar gold piece.

T. E. Hewitt, the appellant's father, testified that during the month of March, 1880, his wife, the appellant's mother, had $150 in gold in the house. He saw it.

Wm. Blake testified that he had for several years known the reputation of the appellant for honesty, and that it was good.

The State proved by the witness Dillard that the appellant's father was poor, and bought goods from him on credit. The appellant lived with his father. Another witness testified that the appellant had offered to purchase goods from him on credit.

J. E. Jacobs testified, for the State, that he was an express agent at Texarkana, and that the defendant had never received an express package from him or over his line. He admitted, however, that there were two express lines to Texarkana.

The opinion indicates the other evidence involved in the rulings of the court below.

*Pope & Pope*, for the appellant.

*H. Chilton*, Assistant Attorney General, for the State.

HURT, J. Appellant was tried and convicted of the theft of ten pieces of gold coin of the denomination of twenty dollars each. The prosecution, to convict, relied not alone but largely upon the fact that, just before the theft, defendant was poor, and that he had no money or means; and that just after the theft he was frequently seen in possession of several gold pieces of the same denomination.

It appears by bill of exceptions that on the night of the

7th of March, the trial proceeding, the defendant's coun-
sel, after having examined all of the witnesses in behalf
of defendant except Mrs. Hewitt, mother of defendant,
stated in open court that Mrs. Hewitt was too unwell to
come into the court-room on that night, and gave notice
to the court and district attorney that, on convening of
court on the next morning, he would offer said witness to
prove the reception of an express package that had been
shipped from Columbus, Ga., to said witness, and delayed
at Texarkana, in the express office, because there was no
express office at De Kalb in Bowie county, Texas, the res-
idence of witness; and that said package was, by the
agent of the express company at Texarkana, forwarded
to Mrs. Hewitt at De Kalb, some time in February or
March, 1880, and that said package contained, among other
articles of value, one hundred and fifty dollars in twenty-
dollar gold pieces, and a ten-dollar gold piece; and that of
this money witness had given defendant three of the
twenty-dollar gold pieces; one to pay Capt. Tom Lenox
on the purchase of a horse, another to Mr. Rosser on pur-
chase of some cows, and another to buy defendant a suit
of clothes; and that these gifts were made in the month
of May, 1880. And counsel further called the attention
of the court to this testimony of this witness as given
before the examining court on the 26th day of June,
1880, when an investigation of this charge was had be-
fore the examining court. It is admitted in the bill that
the witness, Mrs. Hewitt, had sworn before the examining
court substantially to the facts as above set forth. In re-
ply to this statement of the defendant's counsel, the dis-
trict attorney said he would object to the introduction of
Mrs. Hewitt as a witness on the following morning, and
demanded that the defendant close before he (the district
attorney) offered his rebutting testimony. The defend-
ant's counsel then stated that the case was closed, but he
would nevertheless offer Mrs. Hewitt as a witness the

following morning for the purpose of proving by her what he had just stated.

On the following morning when the court convened, Mrs. Hewitt being in court, she was offered as a witness to prove the facts which have been detailed above, and the attention of the court and district attorney was called to the fact that she had sworn to these facts before the examining court, her evidence being then in court and subject to their inspection. The district attorney objected, which objection was sustained by the court, and defendant by his attorneys excepted and reserved their bill.

Those facts were of the highest importance to the defendant under the case as made by the State. For, if true, the inculpatory evidence of the State, except that of the witness Watson, was explained on this proffered evidence, which tended strongly to explain it. Art. 661 of the Code of Criminal Procedure provides that "the court *shall* allow testimony at any time before the argument of a cause is concluded, if it appear that it is necessary to a due administration of justice." If the due administration of justice demanded the introduction of this evidence, the court had no discretion but to admit it. That it was material and of great importance to the rights of the defendant cannot be denied. Did the proper and due administration of the law justify the court in its rejection? We think not, but on the other hand, the attending facts clearly demanded that active operation and application be given to said article. Defendant, the night before the evidence was offered, closed his evidence. At that time Mrs. Hewitt was sick and unable to attend and testify. The court and district attorney were informed of this, and notified that on the next morning she would be offered to prove certain very material facts. That she was sick was not in any manner questioned or denied. There was not the slightest circumstance indicating a disposition on the part of counsel for the defendant to

impede the progress of the trial or trifle with the court. How the introduction of that evidence at that time could even tend to obstruct or trifle with the due administration of justice, we fail to comprehend. We are of the opinion that, not only the due administration of justice, but the plainest principles of right demanded its reception. The law does not demand the life, liberty or property of its citizens, but upon a fair and legal trial. Instead of seeking to convict by unfair means, every opportunity should be, and is by the law, extended the citizen to meet the charge made against him, consistent with the due administration of justice.

We are of opinion that the court erred in sustaining the objection of the district attorney to the evidence proffered, and that the judgment should be reversed.

*Reversed and remanded.*